IN RE ESTATE OF KIRKWOOD.

(No. 27610—Decided May 19, 1966.)

*Messers. Morley, Stickle, Keeley & Murphy,* for appellants.
*Mr. Chester W. Lindsay,* for appellee.

CORRIGAN, J. This is an appeal on questions of law from a judgment of the Probate Court of Cuyahoga County overruling a motion for a new trial and confirming an order of the referee, which sustained an order of distribution in kind.

On April 29, 1958, Carol M. Kirkwood executed her last will and testament which, in part, provided:

"Item 2—I give, devise and bequeath to Therese G. Moorehouse, Mentor, Ohio, my diamond ring and sixteen (16) shares of common capital stock of American Telephone & Telegraph Company."

"Item 4—I give, devise and bequeath to Ruth G. Hohlfelder, North Perry, Ohio, sixteen (16) shares of common capital stock of American Telephone and Telegraph Company and one thousand ($1,000.00) dollars."

"Item 5—I give, devise and bequeath to Alice Blyth, East Cleveland, Ohio, two (2) shares of common capital stock of American Telephone and Telegraph Company."

"Item 10—I give, devise and bequeath the residue of my estate to Therese G. Moorehouse, Mentor, Ohio."

At such time the total amount of common stock owned by Carol M. Kirkwood in American Telephone and Telegraph Company was thirty-four shares.

American Telephone and Telegraph Company and Carol M. Kirkwood shall hereinafter be referred to as A. T. & T. and testatrix, respectively.

Thereafter, on April 15, 1959, A. T. & T. split its common stock on a three-for-one basis reducing the par value of such stock from $100 to $33.33 per share. This stock split gave testatrix a total of one hundred two shares. On April 16, 1960, she died, owning these one hundred two shares.

In the course of the administration of the estate, the Probate Court heard and granted an application for distribution in kind in which Alice Blyth received two shares of A. T. & T. common stock, Ruth Hohlfelder received sixteen shares of such stock, and Therese G. Moorehouse received ninety shares of such stock. Six of the ninety shares of Therese Moorehouse were acquired with rights exercised after the death of the testatrix and are not in issue in this appeal.

Alice Blyth, the appellant herein, then filed a motion to modify such order on the basis that she was entitled to an additional four shares created by the three-for-one stock split. Upon hearing, the referee overruled this motion and sustained the order granting distribution in kind. The decision, with an opinion by the referee is officially reported in 2 Ohio Misc. 56.

Thereafter, a motion for new trial was filed and overruled by the court, which in turn confirmed the referee's decision and reduced the same to judgment from which judgment this appeal is taken.

Appellant urges two claims of error as follows:

1. "The order of distribution in kind of the Probate Court in relation to its award of the 68 additional shares resulting from the 3 for 1 split of A. T. and T. stock to the residuary legatee instead of awarding them pro rata to the three legatees according to the number of shares bequeathed to each, and its judgment overruling appellant's motion to modify the same in said respect were prejudicial to the appellant, erroneous and contrary to law."

2. "The judgment of the trial court is not sustained by the evidence, and is against the manifest weight thereof, to the prejudice of appellant."

The above assignments of error point up the basic issue, namely:

Where a person executes a will bequeathing shares of corporate stock, such bequest being devoid of any expression of ownership, and subsequently during her lifetime, without changing her will, receives additional stock resulting from a stock split which increases the number of shares and proportionately reduces the par value per share, should such additional shares be distributed to the legatee or to the residuary estate?

In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testatrix, and such intention must be ascertained from the words which she used in her will. See *Townsend's Exrs.* v. *Townsend,* 25 Ohio St. 477.

The position of the Probate Court in holding that the legatees were not entitled to the stock resulting from the stock split seemed to be that the legacies created by the will in question were general, in that there was no language expressive of ownership or so-called "possessive words" in the bequests to change what was claimed a general legacy into what was a specific legacy.

A general legacy is one that can be satisfied out of general assets of the estate, while a specific legacy is limited to a specific fund or thing and not payable out of the general assets of the estate. The courts have tended to consider questionable legacies as being general rather than specific, in that a specific legacy will be considered adeemed if the testator disposes of the subject matter of the legacy during his lifetime.

However, it must be kept in mind that the preference for

deeming a questionable legacy general is a rule of construction, and it must give way where the intent of the testator to make a specific legacy can be ascertained by reading the will from its four corners, and in light of the surrounding circumstances at the time of its execution.

The appellee basically relies upon two Ohio cases, the first being *Hood* v. *Garrett,* 53 Ohio App. 464, which concluded that a residuary estate was entitled to stock dividends accruing after the testator's death for the reason that a bequest of a portion of a number of shares of stock is a general bequest where no particular shares were designated in the will.

We do not believe this case to be controlling in the instant case for the issue raised dealt with a stock dividend and not a stock split, and the two cannot be paralleled. A stock split is a change in form only and does not result in an increase in capitalization. Moreover, we are not constrained by rules of construction if in fact an intent to make a specific legacy can be discerned from the will.

The other case relied on is *Clegg, Exr.,* v. *Lippold,* 68 Ohio Law Abs. 590. Suffice it to say that we believe it not applicable to the instant case, and, furthermore, it is a decision of a lower court, and, therefore, not controlling.

In reviewing cases from sister states, we find a divergence of theories facing the court to determine how the shares resulting from a stock split shall pass.

In an article entitled "Special and General Legacies of Securities—Whither Testator's Intent" by Professor John C. Paulus, 43 Iowa Law Review 467, that is thrice cited by the lower court, the writer makes the following generalizations, at page 515, relating to the classification of bequests of securities, some of which bear on stock split situations:

"* * * (1) If the bequest is described with the use of possessive words it is specific; (2) * * *; (3) if a cash legacy accompanies the bequest of securities the bequest is specific; * * *; (6) the relationship between the quantity of securities owned at execution and the amount given in the will has little probative value; (7) there is a greater probability that a bequest will be considered specific if accretion or abatement is in issue rather than ademption; * * *"

None of the conclusions is precisely applicable except that

we have no ademption problem, and, also, to say that the fact that the testatrix bequeathed all the shares of A. T. & T. she owned at the time of the execution of her will is of little probative value.

In the case of *Estate of Helfman,* 193 Cal. App. 2d 652, the decedent was the owner of 23,614 shares of stock in the Parke, Davis and Company. By will and codicils, he bequeathed 1,980 shares to some twelve legatees, the remaining shares falling in the residue. Some years later he was adjudged incompetent and thereafter died. Subsequent to the execution of his will, Parke, Davis and Company split its stock three for one. The court held, in the sixth paragraph of the syllabus:

"Where the testator bequeathed to named legatees specified amounts of stock in a corporation which, after execution of the will and prior to the testator's death, ordered a stock split of three for one, the legatees were entitled to the total number of shares represented by the shares named in the will, rather than being limited to the exact number mentioned by the testator."

In arriving at such conclusion, the court made no determination as to whether the legacy was specific or general and said, at page 656:

"In other states of the United States, outside of California, it is clear that the majority rule on 'stock splits' is that the total number of shares represented by the shares named in the will is ordinarily distributed to the legatee named. Some of the authorities discuss a situation such as that presented in the case here at bar as a specific bequest, while some resolve the problem on the basis of a general bequest, but the reasoning in both types of approach clearly covers the problem here presented. * * * "

In *Allen* v. *National Bank of Austin,* 19 Ill. App. 2d 149, 153 N. E. 2d 260, the court held that the will in question manifested the testatrix's intention that each legatee of stock (bequests were devoid of possessive words) was entitled to additional shares issued as a result of a stock split occurring after the execution of the will and it was not her intention that such additional stock should go to the residuary legatee. As to whether the legacy was general or specific, the court said, at page 156:

"* * * In the instant case the estate is more than adequate;

to cover all bequests, and the rationale behind the classification of legacies is not pertinent for our purposes. Therefore, many of the cases in which these symbols have been used to characterize bequests are not germane to the instant case. In most cases where a stock split or stock dividend was involved, nothing more than lip service has been paid to the classification. Instead, courts have sought to find the intention of the testator, and almost always have found that the additions of stock in stock splits go to the legatee, as a consideration of the cases will reveal.''

Also, in the case of *In re Estate of Parker,* 110 So. 2d 498, the Florida District Court of Appeals held that common stock bequeathed to the testator's daughter carried with it additional shares from a stock split. The court said, at page 504, in regard to classification of legacies:

''* * * For the purpose of our decision, however, it is immaterial in which category the bequest may fall. We are convinced that the stock split which occurred as a result of corporate reorganization after execution of testator's will, but before his death, effected a change only in the form of the shares of stock, and not in their substance. This contingency was one which the testator had no reason to anticipate at the time of execution of his will, and was one over which he had little, if any, control. * * *.''

In the case of *Heinneman* v. *Colorado College,* 150 Colo. 515, 374 P. 2d 695, the testatrix bequeathed 108 shares of stock "I may own at the time of my death" in A. T. & T. equally to three cousins. Thereafter, the stock split three for one. In holding such bequest to be specific, the court said, at page 523:

"Under the record as made we conclude that it was the intention of the testatrix to bequeath to her cousins the full value of the asset represented by 108 shares of A. T. and T. stock upon the date the will was executed, and that the split in the stock which thereafter occurred does not diminish the value of such bequest. That the cousins are entitled to 324 shares of the stock which issued following the split stock operation, together with the earnings thereof accruing from and after the death of testatrix.''

In reaching this conclusion, the court said, at page 520:

''It is the duty of the court to determine the actual intent

of the testatrix and having determined that intent, then to see that it is carried out, and that the beneficiaries named receive that which the donor intended they should receive. The court should not so construe the will here involved as to deprive a beneficiary of a value which the testatrix intended to be given, and which construction would result in the residuary legatee receiving an asset which the testatrix obviously did not intend that it should receive.

"At the time of making her will testatrix unquestionably intended to dispose of an interest in a corporation represented by 108 shares of stock having a par value of $100.00 per share. By unilateral action of the company, shortly before her death, the stock split was accomplished, without participating action on the part of the testatrix. The value originally represented by 108 shares of stock was represented by 324 shares at the time of the death of testatrix.

"It is perfectly apparent that the deceased did not intend that the bequest to the cousins could be reduced two-thirds in value by action of the directors of the American Telephone and Telegraph Company. It is likewise perfectly apparent that the testatrix did not intend that two-thirds of that which she specifically gave to the cousins should be withdrawn from them and be bestowed upon the residuary legatee. * * *."

The case of *Warner* v. *Baylor, Exr.*, 204 Va. 867, 134 S. E. 2d 263, involved an A. T. & T. and a Westinghouse stock split. The testatrix bequeathed varying amounts of stock to several beneficiaries in the following form:

"I give and bequeath unto.............. ................ shares of common stock of the American Telephone and Telegraph Company; * * *."

The court held that the will manifested an intent to give the legatees a proportionate interest the testatrix had in the corporations at the time of the execution of her will, thereby making the legacy specific and entitling such legatees to the proportionate increases in the number of shares created by the stock splits. In arriving at its conclusion, the court said, at page 876:

"It is apparent from reading the testatrix's entire will that before and at the time of its execution she had given considerable thought to determining the objects of her bounty and had

a full knowledge of the value of the various assets which made up her large estate. The will represents an apportionment of her estate according to what she considered to be her affections, obligations, friendships, and duties to charities. It shows testatrix's general scheme and plan of distribution and reveals her purpose and intent.
   "* * *

"To uphold the contention of the appellees that the additional shares issued as a result of the stock split should pass to the residuary legatees would thwart the plain intention of the testatrix and upset the scheme of distribution of her estate which is apparent from the four corners of her will."

We have reviewed many other cases that pertain to the case at bar, some of which are contrary. However, in the final analysis we believe the majority of cases, notwithstanding the various lines of reasoning used in arriving at a conclusion, to be in accord with the salutary rule set down in 7 A. L. R. 2d 281:

"The rule is definitely established, at least in the United States, that a split-up, or reduction of the par value, of shares of stock which were the subject of a bequest does not result in an ademption of the bequest, unless a contrary intention on the part of the testator appears, the split-up not amounting to an extinguishment of the existence of the subject of the gift, and, so, the legatee being entitled to the increased number of shares which replace those bequeathed."

The testamentary scheme of testatrix for disposition of her property is clearly evinced by a reading of the will. Besides the stock in question, she gave other legatees personal items such as a watch and chain, a gold Hamilton wrist watch, and gifts of money. We believe she had equated what she had to bequeath and to whom it would be bequeathed. The stock split did not create any new property. All it created was a different representation of the old property.

The fact that the testatrix left stock other than A. T. & T. to pass under the residuary clause, while bequeathing sixteen out of the thirty-four shares of A. T. & T. stock to Miss Moorehouse who would have taken them by reason of being residuary legatee, would indicate that the testatrix was bequeathing the thirty-four shares she then owned.

154

We can discern no intent of the testatrix to deny the benefits of the stock split, which would result in a reduction of the value of the legacy in question.

We find as a matter of law that the testatrix intended to *specifically* dispose of the A. T. & T. stock she possessed at the time of the execution of the will, and, therefore, the bequest made to Alice Blyth carries with it the additional shares of stock which emanated from a stock split that was received by the testatrix prior to her death.

Accordingly, the order of the Probate Court overruling appellant's motion to modify its order of distribution, and its judgment awarding the additional shares to the residuary legatee was contrary to law and prejudicially erroneous to the appellant herein, and such order and judgment is hereby reversed and the cause is remanded to the Probate Court with instructions to grant such motion and to award such additional shares and all increments thereto to the appellant.

*Judgment accordingly.*

ARTL, C. J., and SILBERT, J., concur.