Will A. MORRISS, Jr., et al., Independent Executors of the Estate of Florence Moore Thompson, Deceased, and as Testamentary Trustees Under the Will and Codicil of Florence Moore Thompson, Deceased, Appellants,

v.

Alice Thompson PICKETT and Jean Thompson Bodorff, Appellees.

No. 15227.

Court of Civil Appeals of Texas, San Antonio.

Nov. 28, 1973.

Rehearing Denied Jan. 2, 1974.

--- ◆ ---

Moriss, Boatwright, Lewis & Davis, San Antonio, for appellants.

Gresham, Davis, Gregory, Worthy & Moore, San Antonio, for appellees.

KLINGEMAN, Justice.

A will construction case. Appellants, Will A. Morriss, Jr., and Clarence R. Boatwright, as independent executors of the estate of Florence Moore Thompson, deceased, and as testamentary trustees under her last will and testament, brought suit in the district court for a declaratory judgment seeking a judicial construction of the will and codicil thereto of Florence Moore Thompson; for approval of their final account; and for order of partition and distribution of the estate. After a trial to the court without a jury, judgment was entered construing the will and codicil, approving appellants' final account as executors, and ordering a partition and distribution. Appellants take a limited appeal from that part of the judgment decreeing that 800 shares of stock of May Company Department Stores should go to and be divided equally between appellees, Alice Thompson Pickett and Jean Thompson Bodorff; and also to the trial court's allocation of expenses of administration and federal estate and state inheritance taxes between the beneficiaries under the will. Appellees, by cross-point, complain that the trial court erred in awarding additional attorney's fees of $3,500 to appellants' attorneys, Morriss, Boatwright, Lewis & Davis, in the event of an appeal of the judgment.

Florence Moore Thompson executed a last will and testament on June 25, 1964, and a codicil thereto on December 20, 1966. After her death on October 4, 1969, said will and codicil were duly probated in the county court of Bexar County, Texas. In such will, she makes specific bequests of numerous shares of stock to various devisees; appoints Will A. Morriss, Jr., and Clarence R. Boatwright as independent executors of her estate; and sets up a testamentary trust primarily for the benefit of her niece, Edna Moore Starcke, in which Will A. Morriss, Jr., and Clarence R. Boatwright are the designated trustees, and in which she devises and bequeaths various named stocks to such trustees, together with all the rest, residue and remainder of her estate in trust for the beneficiary of such trust. In such will, she specifically devises 200 shares of May stock to Alice

Thompson Pickett, and 200 shares of May stock to Jean Thompson Bodorff.

On April 21, 1964, the board of directors of May Company approved a two-for-one stock split, which was approved by the stockholders on June 10, 1964; and the 400 additional shares here in dispute resulting from such stock split were distributed on June 30, 1964, after the decedent had executed her will on June 25, 1964.

The controversy here involved is whether the additional 400 shares received by the decedent as a result of the stock split should go to appellees, Alice Thompson Pickett and Jean Thompson Bodorff, or should pass to the testamentary trust of which the appellants are the trustees.

The will under construction contains two specific paragraphs referring to stock splits and stock dividends, the applicable parts of which are hereinafter set forth, to-wit:

"8. . . . In this connection, however, in the event during my lifetime any additional stock dividends shall be declared and received, whether by division of shares of stock by the company or otherwise, then such additional stock dividends or additional shares received by division of stock shall go and be included in the rest and residue of my estate as provided for in paragraph 7 above, *except as herein specifically provided.*" (Emphasis added.)

"11. I am familiar with the fact that from time to time there occurs what is commonly called 'stock splits' and the number of shares of said stock may change due to such 'splits', and that there also are stock dividends upon various stocks, all of which I have given in this will, and I desire and direct that the additional stock, whether by stock splits or by stock dividends, shall belong to the beneficiary hereunder to whom the original gift of stock was made."

Under date of December 20, 1966, the decedent executed a codicil wherein she cancels and annuls paragraph 7 of her original will (the testamentary trust and residuary clause) and substitutes a new paragraph 7, under which she bequeaths the same shares of stock to the same trustees as in the original will, and which new paragraph 7 contains basically the same general residuary clause. This codicil contains no specific bequest of, nor any reference to, May stock. At the time of the execution of this codicil, the 400 additional shares of May stock, or the certificates evidencing the ownership thereof, had been distributed and were in testatrix's possession, which distribution was made after the execution of the original will.

By two points of error, appellants assert that the trial court erred: (1) in finding and holding that all 800 shares of May stock should go to appellees, to-wit, 400 shares to appellee Pickett, and 400 shares to appellee Bodorff; and (2) in denying and failing to sustain appellants' contention that the May stock should go 200 shares to appellee Pickett, 200 shares to appellee Bodorff, and 400 shares to the testamentary trustees.

 Our Supreme Court, in Republic National Bank of Dallas v. Fredericks, 155 Tex. 79, 283 S.W.2d 39, 42 (1955), set forth certain recognized and established rules applicable to construction of wills. (a) The meaning of the will must be determined by the language used ". . . within the four corners of the instrument." (b) The dominant purpose in the construction of a will is to ascertain the intention of the testator in disposition of his estate. (c) A will should be so construed as to give effect to every part of it, if the language is reasonably susceptible of that construction. (d) The testator will not be presumed to have done a useless thing. (e) All words which testator used in his will and which express his wish for distribution of his estate on his death should be

interpreted in the sense in which they were used in order that the plan of distribution of his estate may be enforced.[1]

■ When we consider the language of the will and codicil as a whole and give due regard to all the provisions thereof, we are convinced that it was the intention of the testatrix that the 400 additional shares of May stock received as the result of a stock split should go to, and be the property of, the original devisees of the May stock in the will, Alice Thompson Pickett and Jean Thompson Bodorff; and we hold that the trial court properly awarded the entire 800 shares of stock to appellees, to-wit, 400 shares to Alice Thompson Pickett, and 400 shares to Jean Thompson Bodorff. There are a number of reasons why we reached this conclusion.

(1) In the first place, although the stock split was approved prior to the date of the execution of the will, such shares were not distributed until after the execution of such will and were not in her possession on the date of execution of the original will. However, on the date she executed the codicil in which she revoked and changed only paragraph 7 of the will (testamentary trust and residuary clause of the will), such 400 additional shares had been distributed to her; and although she specifically lists and bequeaths to the testamentary trustees eight different named stocks, which are a substantial portion of the stocks owned by her, she does not mention or refer to the May stock. If it was her intention at this time that the additional 400 shares of May stock which she possessed at such time were to go to the testamentary trustees, it would have been a log-

ical and easy thing to have specifically named and devised such stock to the testamentary trustees.

■ (2) A reasonable and logical construction of paragraphs 8 and 11, the paragraphs which refer to "stock splits" and "stock dividends," when taken in context with the entire will, compels the conclusion that it was the testatrix's intention that the additional shares of May stock received as the result of the stock split should belong to the beneficiaries to whom the original gift of stock was made. The earlier clause in the will (paragraph 8) provided that any additional stock dividends received during her lifetime ". . . shall go and be included in the rest and residue of my estate as provided for in paragraph 7 above, *except as herein specifically provided*." (Emphasis added). Paragraph 11, which is a later provision in the will, recites that she is familiar with the fact that from time to time there occur what is commonly called "stock splits," and the shares of such stock may be changed through such splits, and that there are also stock dividends upon various stocks ". . . all of which I have given in this will, and I desire and direct that the additional stock, whether by stock splits or by stock dividends, shall belong to the beneficiary hereunder to whom the original gift of stock was made." When a will contains a general provision and an inconsistent specific provision, the latter will control regardless of the position in which the provisions appear in the will; but if there is an irreconcilable conflict in an earlier and a later clause, the earlier clause must give way to the later one, which prevails as the latest expression of the testator's intention on the

---

1. The cardinal rule of construction of wills always is that the intention of the testator will control. The purpose and efforts of courts is always to ascertain, by all legitimate means, the real intention of the testator and to give effect to it, if the purpose intended be not unlawful. When a will is plain in its terms and unambiguous in its meaning as to the lawful intentions of the testator, there is no cause for construction; it is a mere matter of legal interpretation and enforcement. Courts should never adopt any rule of construction which has the effect to destroy the manifest intention of the testator. The court always will consider the instrument from its four corners; every part, sentence, clause or word. Presumably the testator has placed nothing superfluous or meaningless in his will; but he intended every part, sentence, clause, and word to have a meaning and to play a part in the disposition of his property. Lockett v. Wood, 84 S.W.2d 798, 801 (Tex.Civ.App.—Galveston 1935, affirmed 131 Tex. 287, 115 S.W.2d 405 [1938]).

particular subject. 61 Tex.Jur.2d, Wills, Sections 141 and 142.

■ (3) We are also persuaded by the fact that a stock split does not increase the value of the stock, but leaves the stockholder exactly where he was before.[2] To accept appellants' construction of the will would reduce the value of appellees' May stock in half; and if two constructions are each fairly possible, one of which indicates an absurd or unjust intention, and the other indicates a reasonable and fair intention, the court will give preference to that construction which indicates a reasonable and fair construction. 4 Page on Wills, Construction—General Principles, Section 30.12.

■ In stock split cases, the testator's intention has almost always been found to be that the additional shares go to the designated beneficiary, not the residuary legatee. In re Estate of Kirkwood, 6 Ohio App.2d 146, 216 N.E.2d 895 (1966); O'Neill v. Alford, 485 S.W.2d 935 (Tex. Civ.App.—Houston [1st Dist.] 1972, no writ). It is well established that a split up of shares of stock which were the subject of a bequest does not result in an ademption of the bequest, unless a contrary intention on the part of the testator appears, with the legatee being entitled to the increased number of shares which replace those bequeathed. Annot. 7 A.L.R.2d 276, 281; In re Estate of Barslow, 128 Vt. 192, 260 A.2d 374 (1969); Egavian v. Egavian, 102 R.I. 740, 232 A.2d 789 (1967); Allen v. National Bank of Austin, 19 Ill.App.2d 149, 153 N.E.2d 260 (1st Dist., 1st Div. 1958); 36 Albany Law Review 182.

Appellants' points of error Nos. 1 and 2 are overruled.

Appellants' point of error No. 3 relating to allocation of expenses of administration and taxes is dependent upon the Court sustaining their points Nos. 1 and 2; and in view of our holding herein, it is not necessary to pass upon such point.

We next consider appellees' cross-point that the trial court erred in awarding appellants additional attorney's fees in the amount of $3,500 for handling this case on appeal because there was no evidence of the reasonableness of such attorney's fees. Appellants assert that appellees have no standing to complain of the award of attorney's fees, and that this cross-point should not be considered by this Court, because appellees did not perfect an independent appeal from the portion of the judgment that they now complain of, in that they filed no appeal bond.

■ As a general rule, if an appellee wishes to complain of some ruling of the trial court during the course of an appeal which has been perfected by the opposite party, it is not ordinarily necessary for appellee to perfect an independent appeal; however, where a judgment is definitely severable, and appellant has strictly limited the scope of his appeal to a severable portion of such judgment, the appellee must perfect his own appeal before he will be heard to complain about another part of the judgment. Appellate Procedure in Texas, The Appellee's Brief, Section 13.16; Scull v. Davis, 434 S.W.2d 391 (Tex.Civ. App.—El Paso 1968, writ ref'd n. r. e.); 4 Tex.Jur.2d, Appeal and Error—Civil, Section 671.

Although some of the earlier cases take a very limited view on the consideration of cross-points in a limited appeal where the appellee had not taken an independent appeal, there are more recent cases which take a more liberal view, in which the right to cross-assign error is given a wide

2. In Heinneman v. Colorado College, 150 Colo. 515, 374 P.2d 695, 697–698 (1962), which involved a bequest of stock and a stock split, the Colorado Supreme Court said: "It is the duty of the court to determine the actual intent of the testatrix and having determined that intent, then to see that it is carried out, and that the beneficiaries named receive that which the donor intended they should receive. The court should not so construe the will here involved as to deprive a beneficiary of a value which the testatrix intended to be given, and which construction would result in the residuary legatee receiving an asset which the testatrix obviously did not intend that it should receive."

scope. Dallas Electric Supply Co. v. Branum Co., 143 Tex. 366, 185 S.W.2d 427 (1945);[3] Ward v. Scarborough, 236 S.W. 441 (Tex.Com.App.1922, jdgmt. adopted); O'Neil v. O'Neil, 77 S.W.2d 554 (Tex.Civ. App.—Eastland 1934, writ dism'd); Rule 420, Texas Rules of Civil Procedure. Our courts have held that they can consider cross-points so long as they affect the interests of appellant or bear on matters presented on appeal. Bowman v. Puckett, 185 S.W.2d 228 (Tex.Civ.App.—San Antonio 1945, reversed on other grounds 144 Tex. 125, 188 S.W.2d 571 [1945]);[4] Burket v. Delaware Drilling Corp., 435 S.W.2d 307 (Tex.Civ.App.—El Paso 1968, writ dism'd); Scull v. Davis, supra; 4 Tex. Jur.2d, supra.

■ Appellants limited their appeal to that portion of the judgment awarding the entire 800 shares of May stock to appellees, which included the 400 shares received by testatrix as the result of a stock split; and also to the trial court's allocation of expenses of administration and federal estate taxes and state inheritance taxes between the various beneficiaries under the will. Attorney's fees are an expense of administration. Kitchens v. Culhane, 398 S.W.2d 165 (Tex.Civ.App.—San Antonio 1965, writ ref'd n. r. e.); Armstrong v. Anderson, 55 S.W.2d 235 (Tex.Civ.App.— El Paso 1932, no writ). The awarding of attorney's fees and the reasonableness of such fees directly affect the interests of both appellants and appellees, as well as all the beneficiaries under the will.

It is seen from the record that the attorneys who represented appellants in the trial court and on this appeal are also the independent executors and the testamentary trustees under the will. The judgment provides that such attorneys are entitled to additional attorney's fees in the amount of $3,500 for handling the case on appeal in the event of an appeal from the judgment or any part of such judgment. Such judgment contains a notice of appeal by appellants' attorneys as independent executors of the estate of Florence Moore Thompson and as testamentary trustees under the will.

The matter of attorney's fees and the reasonableness of such fees bear on the matters presented in the appeal of appellants, and the issues brought up on appeal by appellants are directly connected with the issue of attorney's fees. We are of the opinion that the record here presents a situation where the appellees are entitled to be heard on the matters complained of by cross-point.

■ The only testimony in the record with regard to the $3,500 attorney's fees was testimony by one of appellants' attorneys that he felt that $3,500 was ". . . a reasonable reserve in the event of an appeal . . . for attorney's fees." There is no evidence of the extent of, or the amount of, legal services performed or to be performed in connection with an appeal, or the reasonable value thereof. In Great American Reserve Insurance Co. v. Britton, 406 S.W.2d 901 (1966), the Supreme

---

3. The Supreme Court held that an appellee may bring cross-assignments against appellant without perfecting an independent appeal and that the rights of an appellee to do such have not been restricted by our rules of civil procedure, but have been recognized by and confirmed by such rules. Rule 420, Texas Rules of Civil Procedure. The rule doing away with the necessity of prosecuting two appeals from the same judgment is well recognized and should not be departed from except in cases where the judgment is definitely severable and appellant strictly limits the scope of his appeal to a severable portion thereof.

4. "We have decided that we were in error in holding that appellee could not seek affirmative relief because he did not perfect his appeal. Rule 420, T.R.C.P., provides that if an appellee desires to complain of any ruling or action of the trial court, his brief in regard to such matters shall follow substantially the form of the brief for appellant. This provision undoubtedly authorizes an appellee to assign error by way of cross-points. The only limitation upon this right is that an appellee who has not himself taken an appeal may make cross-points so long as they affect the interest of the appellant or bear upon matters presented in the appeal." 185 S.W.2d at 231.

Court held that a court does not have the authority to adjudicate the reasonableness of attorney's fees on judicial knowledge without benefit of evidence. There should be competent proof of the reasonableness of such attorney's fees. See also Johnson v. Universal Life & Accident Insurance Co., 127 Tex. 435, 94 S.W.2d 1145 (1936); Insurance Company of North America v. Escalante, 484 S.W.2d 608 (Tex.Civ.App. —San Antonio 1972, writ ref'd n. r. e.); Webster v. Webster, 442 S.W.2d 786 (Tex.Civ.App.—San Antonio 1969, no writ); Schecter v. Folsom, 417 S.W.2d 180 (Tex.Civ.App.—Dallas 1967, no writ); Rhoades v. Miller, 414 S.W.2d 942 (Tex. Civ.App.—Tyler 1967, no writ); Reynolds Research & Manufacturing Co. v. Scamardo, 412 S.W.2d 941 (Tex.Civ.App.—Waco 1967, no writ). The award of attorney's fees in the amount of $3,500 for handling this case on appeal cannot stand under the record.

The judgment of the trial court is reformed to delete therefrom the award of $3,500 attorney's fees to appellants for handling this appeal. In all other respects, the judgment is affirmed.