BOERSTLER, APPELLEE, *v.* ANDREWS, EXR., APPELLANT.*

HAMMER ET AL., APPELLEES, *v.* ANDREWS, EXR., APPELLANT.*

(Nos. C-850145 and -850378 — Decided February 5, 1986.)

APPEALS: Court of Appeals for Hamilton County.

*George F. Patterson, Jr., Timothy P. Nolan, Judith A. Anton* and *Joseph S. Honerlaw,* for appellees.
*Joseph Novik,* for appellant.

HILDEBRANDT, J. Mildred Mary Downer ("testatrix") died on March 20, 1983. Her will was recorded in the Probate Court of Hamilton County on March 30, 1983, and on that date James G. Andrews, Jr., the appellant,[1] was appointed the executor of the estate by the court.

I

Item V of the will bequeathed to the testatrix' cousin, appellee Mary T. Boerstler,[2] "fifty shares of *my* General

---

* Reporter's Note: A motion to certify the record to the Supreme Court of Ohio was overruled on May 28, 1986 (case No. 86-487).

[1] The instant appellant appeals from the judgments rendered by the lower court in its case Nos. C-84363 and -84380, to which we have assigned case Nos. C-850145 and C-850378, respectively. As the issues contained in each case are closely intertwined, we have *sua sponte* consolidated the cases for purposes of this opinion.

[2] Mary T. Boerstler is the appellee in appeal No. C-850145.

Electric common stock" (emphasis added). At her death, the testatrix owned fifty shares of General Electric stock having a par value of $2.50 per share. On April 28, 1983, this stock split on a two-for-one basis with a new par value of $1.25 per share, increasing the number of General Electric shares in the estate *sub judice* to one hundred. Appellant proposed to distribute fifty shares of General Electric stock to Boerstler and fifty shares to himself as the residuary legatee under the will. Boerstler filed a complaint for declaratory judgment, seeking an order from the court below that she was entitled to have all one hundred shares distributed to her. Thereafter, each party filed a motion for summary judgment on the issue of the distribution of the stock. On February 14, 1985, the trial court issued its written opinion in which it decided in favor of the appellee, finding specifically that the ownership of the fifty shares of General Electric common stock vested in Boerstler on the date of the testatrix' death, and judgment was entered accordingly.

## II

The testatrix' will further provided in pertinent part:

"Item III. I give and bequeath to my friend, Jean Hammer, 210 shares of *my* A.T. & T. common stock; 300 shares of *my* Mobil common stock and 1000 shares of *my* Standard Oil of Ohio common stock.

"Item IV. I give and bequeath to my friend Richard Sulsted,[3] 300 shares of *my* Pepsico common stock; 200 shares of *my* Nabisco common stock and 25 shares of *my* C.G. & E. preferred stock.

"Item V. [Boerstler]

"Item VI. I give and bequeath to my friends Elizabeth Welch, Gabriel

---

[3] We are informed by counsel that the correct spelling of this legatee's name is Sulfsted.

Coorey, Loretta Gleason and Bruce Birkley the sum of Five Thousand Dollars ($5000) each and to my friend Mike McLeod the sum of One Thousand Dollars ($1000).

"Item VII. All the rest, residue and remainder of the property which I may own at the time of my death, real, personal or mixed, tangible and intangible, of whatsoever nature and wheresoever situated, including all property which I may acquire or become entitled to after the execution of this will, including all lapsed legacies and devisees [*sic*], I give, bequeath and devise to my friend James G. Andrews, Jr., if living, otherwise to his heirs." (Emphasis added.)

At the death of the testatrix the stocks described in Items III, IV and V were in existence. On September 21, 1984, the appellees in appeal No. C-850378 filed a complaint ("Hammer complaint") in the court below seeking, *inter alia*, a declaratory judgment that Jean Hammer and Richard Sulfsted were entitled to any accretions (dividends and stock shares due to stock splits) generated by the stocks described in their respective bequests. Thereafter, the appellees filed their motion for summary judgment on the complaint. The court below issued its written opinion on May 8, 1985, in which it determined that the bequests of stock were specific legacies that vested upon the testatrix' death and, as such, the beneficiaries of these stocks were entitled to the accretions. Thereafter, judgment was entered thereon.

## III

The Hammer complaint further sought a judgment declaring that all Ohio taxes shall be paid from the residue of the estate *sub judice*, and that appellant's proposed apportionment of such taxes among the legatees was improper. The motion for summary judgment also demanded judgment on this issue. In its opinion and subsequent jour-

nal entry, the trial court found in favor of appellees.[4]

## IV

Appellant answered the Hammer complaint on October 9, 1984. On the same date, appellant filed an amended answer containing a counterclaim against Hammer, as a result of Hammer's alleged withdrawal of the proceeds of certain savings accounts maintained by the testatrix, seeking judgment against her in an amount to be determined by the court. Appellant further alleged in his counterclaim that the accounts in question were in the names of Hammer and the testatrix with right of survivorship, but that the testatrix' funds were so deposited only for the convenience of the testatrix because of her physical disability, and therefore the funds in question belonged to the estate.[5]

Appellees' motion for summary judgment requested the court below to rule on appellant's counterclaim. The trial court included this matter in its written opinion and judgment entry, determining that the issue had been raised previously by another legatee under the will during the administration of the estate by exceptions to the inventory, and adjudicated by the court in its entry of July 12, 1983.[6]

From the judgments of the court below, appellant brings these timely appeals in which he asserts under appeal No. C-850145 that the trial court erred in granting appellee Boerstler's motion for summary judgment and in overruling his motion for summary judgment. Under appeal No. C-850378, appellant contends that the trial court erred in granting the motion for summary judgment of appellees Hammer et al. For the reasons that follow, we find the assignments of error to be feckless.

## V

We first address the accretions to the stock bequests by the testatrix under Items III, IV and V of the will. In its opinion generated by the Hammer complaint, the trial court found that all bequests of stock in the will were specific as opposed to general legacies. Legacies or bequests may be classified as general, specific or demonstrative. *In re Estate of Mellott* (1954), 162 Ohio St. 113, 54 O.O. 53, 121 N.E. 2d 7, paragraph one of the syllabus. A specific legacy is a gift of a specific thing or some particular portion of the testator's estate, which is described by the testator's will in such a way as to distinguish it from other articles of the same general nature. The distinction between specific and general legacies is that the former singles out the particular thing which the testator intends the donee to have, without regard to value, while general legacies may be satisfied out of the general assets of the estate (the residue), with the chief element being quantity or

---

[4] With the exception of Elizabeth Welch, the legatees named in Items III, IV and VI of the will are appellees in appeal No. C-850378.

[5] The record discloses that on May 6, 1985, appellant filed a motion for leave to file a second amended answer and counterclaim which was opposed by the appellees. There is no indication as to what action was taken by the trial court on the motion and we deem it to have been denied *sub silentio*. Appellant does not make an issue of this matter in the instant appeal.

[6] The record reveals that on May 12, 1983, Joan Kattwinkel (not a party herein) filed exceptions to the inventory in the court below alleging, *inter alia*, that appellant had failed to list certain savings accounts and certificates of deposit held in the name of the testatrix and others. In its entry of July 12, 1983, the court found that the exceptions concerning such accounts and certificates were not well founded and ordered the exceptions dismissed.

value. 32 Ohio Jurisprudence 3d (1981) 268-269, Decedents' Estates, Section 772.

If the object of the specific legacy ceases to exist, the legacy is adeemed or extinguished. *In re Estate of Mellott, supra,* at 115, 54 O.O. at 54, 121 N.E. 2d at 8. A bequest of stock may be specific. *Clegg* v. *Lippold* (P.C. 1951), 68 Ohio Law Abs. 590, 123 N.E. 2d 549.

"* * * The expression of ownership of property by such words as 'my,' 'in my possession,' 'owned by me,' 'standing in my name,' 'which I now hold,' is a well-defined indication that a bequest of that property is a specific legacy." (Footnote omitted.) 32 Ohio Jurisprudence 3d, *supra,* 277, 278, at Section 784 (citing *Clegg* v. *Lippold, supra; In re Estate of Mellott, supra;* and *Warren* v. *Shoemaker* [P.C. 1965], 4 Ohio Misc. 15, 33 O.O. 2d 20, 207 N.E. 2d 419).

In *Clegg* v. *Lippold, supra,* the probate court observed that the testatrix employed the words "of my common stock" in reference to the shares of stock bequeathed in her will. The court concluded that the testatrix intended to make specific bequests of stock. 68 Ohio Law Abs. at 601, 123 N.E. 2d at 556. The court also held that where, after the execution of the will but prior to the death of the testatrix, there was a two-for-one split of the stock whereby there was an exchange by the corporation of two shares of $5 par value stock for one share of $10 par value stock, there was a substantial preservation of the testatrix' interest in such corporation, and the legatees of the specific bequest of the shares of stock were entitled to receive twice the number of stock shares as were mentioned in the will. *Id.* at 603-604, 123 N.E. 2d at 558.

We determine that the bequests of stock contained in the will *sub judice* are specific, and we note that each legacy is preceded by the word "my." Further, the General Electric stock that was bequeathed to Boerstler split in such a manner that one $2.50 par value share was replaced by two $1.25 par value shares.

In *In re Estate of Kirkwood* (1966), 6 Ohio App. 2d 146, 35 O.O. 2d 276, 216 N.E. 2d 895, the Court of Appeals for Cuyahoga County found as a matter of law that where the testatrix intended specifically to dispose of the AT & T stock she possessed at the time of the execution of the will, a bequest to a certain legatee carried with it the additional shares of stock generated by a stock split that occurred prior to the testatrix' death. *Id.* at 154, 35 O.O. 2d at 280, 216 N.E. 2d at 900.

From our review of the cause *sub judice,* we conclude that the instant testatrix intended for the bequests of stock to be specific in nature,[7] and that the trial court correctly ruled that the beneficiaries of such stock were entitled to receive the accretions that accrued subsequent to the testatrix' death.

## VI

We next address that portion of the trial court's entry pursuant to the Hammer complaint that directs appellant to pay all of the Ohio estate taxes from the residue of the estate *sub judice,* without contribution from the specific legatees.

R.C. 2113.86, apportionment of estate taxes, provides in pertinent part:

"Unless the will or other governing instrument otherwise provides, the tax shall be apportioned among all persons interested in the estate. The apportionment shall be made as follows:

"(A) Except as provided in divisions (B) and (C) of this section, the tax shall be computed as to each person's in-

---

[7] See *Townsend's Exrs.* v. *Townsend* (1874), 25 Ohio St. 477, paragraph one of the syllabus, where the court held: "In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator."

terest in the estate by multiplying the applicable tax by a fraction, the numerator of which is the value of the person's interest against which the apportionment computation is being made, and the denominator of which is the aggregate value of the interests of all persons interested in the estate against which apportionment is made. The values used in determining the tax shall be used for the apportionment of the tax under this section.

"(B) Any tax attributable to or otherwise apportioned against the interest of a beneficiary under a decedent's will, which interest is not part of the residuary estate passing under the will, shall be apportioned as follows:

"(1) *The tax shall first be charged to and paid by each person's interest in the residuary estate* to the extent that each person's interest is subject to apportionment under division (A) of this section, and the tax shall be charged to each person's interest in the same manner as the tax directly attributable to each person's interest is apportioned under division (A) of this section.

"(2) If the tax exceeds the total value of the residuary estate that is subject to apportionment under division (A) of this section or if none of the residuary estate is subject to apportionment under this section, all or any part of the tax that cannot be apportioned under division (B)(1) of this section shall be charged to and paid by each person's interest under the residuary estate that may be exempt from apportionment under any other provisions of sections 2113.85 to 2113.90 of the Revised Code, and each person's otherwise exempt interest shall bear its proportionate part of the tax based on the value of that person's interest, as determined under division (A) of this section.

"(3) *If the tax exceeds the total value of the residuary estate* passing under the decedent's will, any part of the tax that cannot be apportioned to the residuary estate shall be *apportioned to the interest of the beneficiaries of each devise or bequest that passes under the will other than as part of the residuary estate* and that is subject to apportionment, in the manner provided under division (A) of this section." (Emphasis added.)

From our research on the matter we discover that the issue *sub judice* is primarily one of first impression. We determine that the trial court was correct when it observed that the Ohio estate taxes are first charged to the residuary estate. If and only if the tax apportioned to the residuary portion exceeds the value of the residue, is there an apportionment among the specific and other nonresiduary bequests. See R.C. 2113.86(B)(1), (B)(2) and (B)(3), *supra*; Wachs, In Defense of the Ohio Tax Apportionment Act (1982), 55 Ohio Bar 1896, 1898-1900. Accordingly, the judgment of the trial court on this issue is affirmed.

### VII

The final issue in the case before us concerns the trial court's ruling on the subject raised in appellant's counterclaim. We have carefully reviewed the records before us and we are persuaded that the subject of the counterclaim that appellant attempted to resurrect is indeed *res judicata.*

"The modern view of *res judicata* embraces the doctrine of collateral estoppel, which basically states that if an issue of fact or law actually is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. A party precluded under this principle from relitigating an issue with an opposing party likewise is precluded from doing so with another person unless he lacked full and fair opportunity to litigate that issue in the first action,

or unless other circumstances justify according him an opportunity to relitigate the issue." (Citations omitted.) *Hicks* v. *De La Cruz* (1977), 52 Ohio St. 2d 71, 74, 6 O.O. 2d 274, 276, 369 N.E. 2d 776, 777-778.

Resultantly, the ruling of the court below pertaining to the counterclaim to the Hammer complaint is affirmed.

## VIII

Having addressed the two assignments of error in appeal Nos. C-850145 and C-850378, relating to each of the trial court's respective rulings, we affirm the judgments from which the appellant appeals.

*Judgments affirmed.*

BLACK, P.J., and KEEFE, J., concur.