**Joseph W. GROSSNER, and Rosalind C. Grossner, Individually and as Parents and Guardians of Sarah Grossner and Ryan Grossner, Plaintiffs–Appellees,**

v.

**THE ESTATE OF Ann GROSSNER, Defendant–Appellant.**

No. 01–3269.

United States Court of Appeals, Sixth Circuit.

Nov. 6, 2002.

Before MARTIN, Chief Circuit Judge; NELSON and GILMAN, Circuit Judges.

PER CURIAM.

The Estate of Ann Grossner appeals the denial of a motion to further enforce a settlement agreement. She argues that she is due 7,500 shares of Citigroup stock that resulted from a stock split based on the 22,500 shares she was promised in the settlement agreement. For the following reasons, we REVERSE the decision of the district court to deny the Estate of Ann Grossner relief.

## I.

This case arises from a family dispute. Beginning in 1990, Ann Grossner began giving some of her assets to her son Joe Grossner to manage in order to receive a high return. In 1994, 1995, and 1996, she directed him to purchase a total of 6,000 shares of what is now Citigroup stock using $362,655 she entrusted to him. Over the years, Joe provided receipts and accountings of the Citigroup stock to Ann. Because of stock splits, Ann Grossner should have owned 22,500 shares by January of 2000.

In 1998, upon the advice of her daughter, Ann Grossner asked Joe Grossner several times to return the money and stocks. He refused, and not until Ann Grossner and her daughter involved a prosecutor who threatened criminal charges in 1999 did Joe relent and return his mother's money. He told her at that point, however, that she owned no stock because he had never purchased it for her. He admitted he forged the receipts and accountings he had previously shown her.

In February of 1999, Joe Grossner and his wife Rosalind Grossner filed a civil suit in state court against his mother, claiming the money he returned to her had actually been part of a "gifting" program by Ann Grossner to avoid estate taxes. Ann Grossner answered, removed to federal court, and counterclaimed for fraud and conversion on Joe's part. In January of 2000, the parties reached a settlement agreement wherein Joe Grossner preliminarily agreed to purchase the 22,500 shares of Citigroup stock and Ann Grossner agreed to return the $362,655 originally sent to her son for its purchase. The 22,500 shares represented the number of shares Ann Grossner would have owned at that point had her son purchased the Citigroup stock as he represented in the mid-nineties.

The parties anticipated that they would subsequently enter into a more formal agreement. Pending that agreement, an entry was made on the court's docket reflecting a settlement and dismissal with prejudice. Ordinarily, the transfer of the stock would have been completed in less than thirty days. Instead, the negotiations took almost a year. During that time, Citigroup stock split again.

Whoever was correct or incorrect is a matter we will leave for another day because the case was settled by the district court. On November 14, 2000, the district court ruled on both parties's motions to enforce and decided to enforce the settlement according to the terms of the January agreement. Two days later, copies of the Citigroup shares were sent to counsel for the Estate of Ann Grossner for due diligence. The Estate became aware of the August stock split soon thereafter. As

of the time of briefing, the additional shares had a market value of approximately $325,000.

The court order required that the transfer occur within twenty-one days of its filing. This occurred timely on December 18, 2000. Joe Grossner gave the Estate 22,500 shares of Citigroup, not 30,000. On January 10, 2001, the Estate filed the Motion to Further Enforce the Settlement Agreement. demanding the additional 7,500 shares from the August 2000 stock split. The district court denied this motion without a written opinion. The Estate of Ann Grossner argues that the shares are still part of the stock she would own today but for her son's malfeasance. She argues that equity and fairness demand she receive the shares.

## II.

We review the district court's enforcement of a settlement agreement for abuse of discretion. *Therma–Scan, Inc., v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000). Because our jurisdiction in this case is dependent upon diversity, we apply Ohio law.

The Ohio Supreme Court, in *C.F. Kettering, Inc. v. Glander*, said that "reorganization or stock split-ups ... did not result in new acquisitions but merely in a change in the form of the certificates or in the number of shares represented by the certificates." 155 Ohio St. 356, 98 N.E.2d 793, 797 (1951). A stock split is not a substantive change in the property represented by the shares of stock. The Ohio Court of Appeals has further said that a stock split "[does] not create any new property. All it create[s][is] a different representation of the old property." *In re Kirkwood's Estate*, 6 Ohio App.2d 146, 216 N.E.2d 895, 900 (1966). The holding in *Kirkwood* was followed by the Court of Appeals in *Boerstler v. Andrews*, 30 Ohio App.3d 63, 506 N.E.2d 279 (1986). *See also Eisner v.*

*Macomber*, 252 U.S. 189, 202–03, 40 S.Ct. 189, 64 L.Ed. 521 (1920); *Toulmin's Estate v. United States*, 32 Ohio Misc. 176, 326 F.Supp. 1028, 1035 (1971). These Ohio decisions have been followed by a multitude of unpublished cases too numerous to name. Ohio law is clear: stock splits do not change the substance of an asset. The 30,000 shares in question here represent the same property at issue before the split.

If the January settlement agreement had been implemented promptly, as the parties anticipated, the Estate of Ann Grossner would have received the 22,500 shares that later split. The Estate of Ann Grossner is therefore entitled to the 7,500 shares of Citigroup stock that resulted from the split.

For these reasons, we REVERSE and REMAND for any further proceedings that may be necessary to effectuate our decision.