PNC BANK, OHIO, N.A. et al., Trustees under the Restated Trust Agreement of Raymond L. Dance dated July 29, 1994, Appellees,

v.

ROY et al., Appellants and Cross–Appellees;  Carolina Truck Terminals, Inc. et al., Appellees and Cross–Appellants;  Dance et al.*

[Cite as *PNC Bank, Ohio, N.A. v. Roy*, 152 Ohio App.3d 439, 2003-Ohio-1542.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–020138 and C–020171.

Decided March 28, 2003.

---

* Reporter's Note:  The court sua sponte removed this cause from the accelerated calendar.

Frost, Brown, Todd, LLC, T. Stephen Phillips and Douglas E. Hart, for appellees.

Katz, Teller, Brant & Hild, Cynthia L. Gibson and Wijdan Jreisat, for appellees and cross-appellants.

Johnson & Johnson Law Offices and Eric C. Johnson, for appellants and cross-appellees.

GORMAN, Judge.

{¶ 1}   These consolidated appeals result from a complaint filed by the plaintiffs-appellees, the trustees of the Raymond L. Dance Trust, seeking the probate court's declaration of the proper apportionment of the estate taxes upon Mr. Dance's estate between two classes of beneficiaries: the appellees/cross-appellants, Mr. Dance's two daughters and seven grandchildren from his first marriage ("the Dance children"), and the appellants/cross-appellees, the five children of Viola Dance, Mr. Dance's second wife ("the Munsey children").  In 1999, the trustees had made substantial, court-approved distributions to both groups of beneficiaries.  The trustees were in doubt about how to apportion the estate

taxes among the beneficiaries of the trust before making further distributions. They applied to the court for guidance on whether to characterize the Munsey children's interests as a general bequest or as a residual interest in the trust assets and thus whether to apportion a share of the estate taxes to their distributions. Because the probate court, in reaching its apportionment decision, incorrectly characterized the bequest to the Munsey children and improperly relied upon precedent based upon a former version of R.C. 2113.86, we reverse its judgment in part. Because the trustees began this action in the probate court, and because Lela Fay Roy, a trust beneficiary, filed objections pursuant to a statutorily conferred right, we reverse the judgment of the probate court to the extent that the court invoked the trust's no-contest clause against her.

### Facts

{¶ 2} Mr. Dance was married for over fifty years to Mary Dance, with whom he had two daughters and seven grandchildren—the Dance children. After Mary Dance's death, Mr. Dance married Viola Munsey in August 1992. At the time of the marriage, Viola had five adult children—the Munsey children. On April 21, 1993, Mr. Dance executed a will and a revocable inter vivos trust agreement. The trust agreement was subsequently amended. The restated trust agreement was prepared by a different attorney and was signed by Mr. Dance on July 29, 1994. On November 1, 1995, PNC Bank became a cotrustee of the trust to serve with Robert Gray Edmiston.

{¶ 3} The estate documents disposed of certain items of tangible personal property to named beneficiaries and directed the balance of Mr. Dance's assets to be distributed to the trust. A marital trust was to be created by Item VII of the trust agreement. It provided that if Viola Dance survived Mr. Dance, then "money and/or property in an amount equal to eighteen (18%) percent of the gross estate as determined for Federal Estate tax purposes" was to be distributed to the marital trust. If she predeceased Mr. Dance, "the foregoing amount" was to be distributed per the terms of distribution in the Marital Trust, which called for the assets to be distributed to the Munsey children in equal shares. The trust agreement also contained a no-contest clause that revoked "any share or interest given to [a] person" that contested the terms of the trust or its operation.

{¶ 4} In April 1995, after three years of marriage, Raymond and Viola Dance were involved in an automobile accident. Viola Dance died in the accident. Mr. Dance was seriously injured and died on December 29, 1995. The gross assets of the estate, computed for estate tax purposes were $16,432,982. An 18 percent share of that amount was $2,957,937. The federal and state estate tax liabilities, as computed by the trustees, exceeded $8,700,000.

{¶ 5} As the trustees began to make distributions of the trust assets, disputes developed between the two groups of beneficiaries over the apportionment of the estate tax burden and the distribution of the assets that would be left after the taxes were paid. The Munsey children contended that their distributions were from a general bequest, not subject to estate tax. The Dance children argued that the Munsey children were residual beneficiaries and should bear a proportional share of the taxes. Beginning in February 1999 and continuing through November 2001, the trustees, acting pursuant to R.C. 2101.24(B) and 2113.86, sought the guidance of the probate court in apportioning the tax burden among the beneficiaries. The probate court issued a series of orders and entries culminating in the entry that is the subject of these appeals.

## I. Jurisdiction and the Nunc Pro Tunc Order

{¶ 6} In the first appeal, *PNC Bank v. Dance* (July 18, 2001), 1st Dist. No. C–000792, this court dismissed the Munsey children's appeal as not being taken from a final order. See R.C. 2505.03. In response, the Munsey children moved the probate court for a nunc pro tunc order adding the Civ.R. 54(B) certification. On November 7, 2001, the probate court granted the motion. But the probate court's use of a nunc pro tunc order to add that certification to the entry was inappropriate. "A nunc pro tunc order cannot be used to supply omitted action, or to indicate what the court might or should have decided, or what the trial court intended to decide. Its proper use is limited to what the trial court actually did decide." *State v. Greulich* (1988), 61 Ohio App.3d 22, 25, 572 N.E.2d 132; see *State ex rel. Mayer v. Henson*, 97 Ohio St.3d 276, 2002–Ohio–6323, 779 N.E.2d 223, at ¶ 14.

{¶ 7} We will consider the November 7, 2001 entry to have effected an amendment of the October 26, 2000 decision, ratifying the earlier decision in its entirety and adding the certification required for this interlocutory appeal. These two entries, read together, provide the judgment from which each group of beneficiaries has sought to appeal.

{¶ 8} Proceedings to apportion estate taxes and to administer inter vivos trusts were specially created by statute, and prior to 1853, neither proceeding was denoted as an action at law or a suit in equity. See R.C. 2505.02(A)(2). Because the entry from which the parties have appealed affected the apportionment of estate taxes and the revocation of one beneficiary's share under the trust, it was made in a special proceeding and affects a substantial right. See R.C. 2505.02(A)(2) and (B)(2); see, also, *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 187, 743 N.E.2d 901. As the order is final, the addition of Civ.R. 54(B) certification made it appealable.

## II.   Apportionment of the Estate Taxes

{¶ 9}   The principal issue on appeal is the apportionment of the estate taxes between the two classes of beneficiaries, the Dance children and the Munsey children.   In resolving this issue, the probate court construed the terms of the Dance trust and will.   We review the probate court's construction of the trust for errors as a matter of law.   See *Banker v. Northside Bank & Trust Co.* (Mar. 13, 1996), 1st Dist. No. C–950401, 1996 WL 107545.

{¶ 10}   On February 19, 1999, the trustees filed a complaint in probate court seeking instructions regarding the apportionment of the estate taxes.   The complaint was made pursuant to R.C. 2113.87, which provides that a fiduciary "may apply to the court that has jurisdiction of the estate and request the court to determine the apportionment of the tax."   The trustees had filed the estate's federal and Ohio estate tax returns, had paid $6,789,192.50 in federal taxes, and were to pay $1,975,702 in state estate taxes to Ohio, Florida, and Kentucky.   The tax payments were made from assets held by the trustees under the trust agreement.   The trustees were in doubt about how to apportion the estate taxes among the beneficiaries of the will and the trust and, in particular, "whether any part of such taxes should be apportioned against the share of the trust estate which passes to the children of Viola Dance pursuant to Item VII and Item VIII" of the trust.

### A.   The Apportionment Statute Applies

{¶ 11}   Ohio's estate tax apportionment statute, R.C. 2113.86(A), declares that "[u]nless a will or another governing instrument otherwise provides, and except as otherwise provided in this section, a tax shall be apportioned equitably in accordance with the provisions of this section among all persons interested in an estate in proportion to the value of the interest of each person as determined for estate tax purposes."   Any intent on the part of a testator or settlor that estate taxes are to be paid in a manner contrary to the apportionment method set forth in R.C. 2113.86 must be clearly expressed in the will.   This contrary "intent must be clear, specific, and unambiguous."   *Matthews v. Swallen* (Oct. 25, 1995), 1st Dist. No. C–940443, 1995 WL 621305.   The apportionment statute applies unless the clear intent of the testator is shown to have been otherwise.   See id.; see, also, *In re Estate of Drosos* (1989), 62 Ohio App.3d 295, 575 N.E.2d 495, and *Wirtz v. Wirtz* (Apr. 9, 1997), 1st Dist. No. C–960497, 1997 WL 162819.

{¶ 12}   The probate court determined that Item V of the Dance will and Item VII and Item VIII of the Dance trust were "totally inconsistent provisions" for the payment of estate taxes.   The will and Item VIII(D) of the trust provided for the equitable apportionment of the estate taxes.   Item VII(B) of the trust did not.

Therefore, the probate court concluded that Mr. Dance's intent was ambiguous and insufficient to shift the tax burdens imposed by the apportionment statute. The probate court correctly held that the tax apportionment statute applied and that the trustees were obligated to apportion the taxes paid in proportion to the value of the interest of each person pursuant to R.C. 2113.86. See *Matthews v. Swallen*, supra. We, therefore, overrule the first assignment of error raised by the Dance children, challenging the probate court's decision to apportion taxes, because Mr. Dance's intent in his estate planning documents is clear.

### B. Application of the Statute to the Munsey Children

{¶ 13} Before making further distributions, the trustees needed to resolve how to apply the statute to the Munsey children's share of the distribution. Because the trustees remained uncertain whether to apportion some of the taxes to the Munsey children's share, they sought guidance from the probate court.

{¶ 14} In the entry on appeal, the probate court reiterated its earlier rulings that because the apportionment statute mandated an equitable share of the estate tax burden, the Munsey children should share in satisfying the tax. Since the assets the Munsey children were to receive from the gross estate exceeded two million dollars, the probate court noted that they ought to bear a proportional share of the estate taxes. The court further noted this court's decision in *Boerstler v. Andrews* (1986), 30 Ohio App.3d 63, 67, 30 OBR 118, 506 N.E.2d 279, in which we held that, pursuant to the apportionment statute, estate taxes are first charged to the residuary estate and should be apportioned among other nonresiduary bequests only if the tax apportioned to the residuary portion exceeds the value of the residue. Relying upon *Boerstler*, the probate court stated that "if the 18% [of the gross Dance estate] received by the Munsey children was not considered a residual distribution, then under R.C. 2113.86(B), the Munsey Children would not be responsible for the taxes associated with the inclusion of that property for estate tax purposes." The court was troubled by the prospect that ruling otherwise would permit the adult stepchildren from a short-term marriage to receive tax-free distributions, while the natural children born of a fifty-year marriage would bear the full tax burden. Had Viola Dance not predeceased Mr. Dance, then her share of the trust assets, presumably conveyed to her children at death, would have been subject to taxation. Upon these circumstances, the probate court found that the bequest to the Munsey children was a residual distribution.

{¶ 15} The probate court erred in reaching this finding. The bequest to the Munsey children is contained in Item VII(A)(2) of the trust agreement, which provides that if Viola Dance predeceased Mr. Dance, 18 percent of the gross estate was to be distributed in equal share to the Munsey children. This

provision characterized the Munsey children's share as a general bequest—a pecuniary gift of a specified amount to be paid out of the estate funds. See *Boerstler v. Andrews*, 30 Ohio App.3d at 65–66, 30 OBR 118, 506 N.E.2d 279; see, also, *In re Estate of Oberstar* (1998), 126 Ohio App.3d 30, 709 N.E.2d 872, fn. 1. In a 1996 opinion letter, PNC Bank's counsel also concluded that the gift to the Munsey children was a general bequest.

{¶ 16} We also note that *Boerstler* was decided under a version of R.C. 2113.86 that, since our decision, has twice been amended. See *In re Estate of Sherer* (1997), 116 Ohio App.3d 345, 348, 688 N.E.2d 46. R.C. 2113.86 now provides as follows:

{¶ 17} "(A) Unless a will or another governing instrument otherwise provides, and except as otherwise provided in this section, a tax shall be apportioned equitably in accordance with the provisions of this section among all persons interested in an estate in proportion to the value of the interest of each person as determined for estate tax purposes.

{¶ 18} "(B) Except as otherwise provided in this division, any tax that is apportioned against a gift made in a clause of a will other than a residuary clause or in a provision of an inter vivos trust other than a residuary provision, shall be reapportioned to the residue of the estate or trust. It shall be charged in the same manner as a general administration expense. However, when a portion of the residue of the estate or trust is allowable as a deduction for estate tax purposes, the tax shall be reapportioned to the extent possible to the portion of the residue that is not so allowable."

{¶ 19} The analysis identified in *Sherer* required the probate court first to apportion the estate taxes equitably among all persons interested in the estate in proportion to the value of the interest each person held as determined for estate tax purposes. See R.C. 2113.86(A). Then, the court was to reapportion any tax that was apportioned against a specific or general devise or an inter vivos trust to the residue of the estate and charge them in the same manner as a general administration expense. The court failed to do this. See R.C. 2113.86(B); see, also, *In re Estate of Sherer*, 116 Ohio App.3d at 348–349, 688 N.E.2d 46. The court also failed to consider whether the Munsey children's bequest included an interest allowable as an estate tax marital deduction. See R.C. 2113.86(C).

{¶ 20} Therefore, the Munsey children's first assignment of error is sustained. Their second, third, and fourth assignments of error and the Dance children's second assignment of error contest the calculation of the income, costs, and appreciation of the estate's assets. Because the record certified for review suggests that these calculations were based upon the probate court's apportionment ruling, and because the probate court may revisit these issues after it complies with R.C. 2113.86, we conclude that these assignments of error have

been rendered moot by our resolution of the first Munsey assignment of error. See App.R. 12(A)(1)(c).

### III. The No–Contest Clause and Challenges to the Trustees

{¶ 21} In their fifth assignment of error, the Munsey children contest the probate court's order that Lela Fay Roy, one of the Munsey children, had violated the no-contest clause of the Dance trust. We find this challenge to be well taken.

{¶ 22} Item XVI of the trust agreement stated that "if any beneficiary * * * shall contest the terms hereof or any of the parts, provisions, operation or management of such Trusts, any share or interest given to that person shall be revoked and shall augment proportionately the share of such beneficiaries hereunder as shall not have joined or participated in said contest."

{¶ 23} On June 12, 2000, Roy individually filed a document entitled "Re-affirmation of and Brief in Support of Her Objections to the Co–Trustees' Proposed Order of Distribution and Apportionment of Taxes." Each of the beneficiary groups involved in this litigation had earlier filed motions similar in character, if not in tone, to Roy's motions in an attempt to persuade the trustees or the probate court to resolve this matter in their favor. Nevertheless, the probate court, possibly in response to the prolonged disputes over the apportionment issues, found that Roy's filing had "attack[ed] the manner and method in which the Trustees have administered the Trust." The court, therefore, held that she had forfeited her right to receive future distributions of principal or income. "But, [i]n order to expedite the conclusion of this matter," the court did not order the trustees to collect trust assets previously distributed to Roy.

{¶ 24} This court has consistently upheld the validity of similar no-contest provisions where a beneficiary had instituted an action to contest a will or trust, for any reason, in violation of a similar no-contest clause. See, e.g., *First Natl. Bank of Cincinnati v. Bardes* (Sept. 13, 1989), 1st Dist. No. C–880607, 1989 WL 104341; see, also, *Bradford v. Bradford* (1869), 19 Ohio St. 546, 1869 WL 90, paragraph one of the syllabus; *Bender v. Bateman* (1929), 33 Ohio App. 66, 168 N.E. 574. But here, Roy did not initiate the questioning of the apportionment of taxes. The trustees did, by invoking the assistance of the probate court to apportion taxes and to administer the inter vivos trust pursuant to R.C. 2113.87 and 2101.24(B). And, in doing so, the trustees invited beneficiaries who "wish[ed] to assert that the Trustee should distribute assets differently tha[n] the Trustee proposes" to make their positions known to the trustees and to the court.

{¶ 25} Where trustees invoke the jurisdiction and request the guidance of the probate court under these statutes, the General Assembly has conferred a substantive right upon "a person interested in the estate * * * [to] indicate his

objection to the manner of apportionment by application to a probate court." R.C. 2113.87(B). We agree with the Ninth Appellate District that "[w]here a beneficiary has not initiated such an action, and has only defended herself by filing pleadings, the 'no contest' clause has not been invoked, and the beneficiary does not forfeit her interest." *Modie v. Andrews*, 9th Dist. No. C.A. 21029, 2002-Ohio-5765, 2002 WL 31386482, at ¶ 25, citing *Moskowitz v. Federman* (1943), 72 Ohio App. 149, 27 O.O. 53, 51 N.E.2d 48, and *Kirkbride v. Hickok* (1951), 155 Ohio St. 293, 302, 44 O.O. 297, 98 N.E.2d 815. This rule against forfeiture of an interest should have equal force where the filing of objections is made pursuant to statute. See *Modie v. Andrews*, supra, at ¶ 29. Therefore, we hold that the probate court erred in invoking the no-contest clause against Roy in this instance.

{¶ 26} Because the probate court erred in invoking the no-contest clause against Roy, the Dance children's third assignment of error, in which they contend that the probate court erred in imposing only a prospective forfeiture upon Roy, is moot. See App.R. 12(A)(1)(c).

{¶ 27} In their sixth assignment of error, the Munsey children assert that the probate court erred by refusing to consider evidence of the improper conduct of the trustees in administering the Dance trust, particularly with regard to whether PNC Bank could serve as a cotrustee. The assignment of error is overruled.

{¶ 28} R.C. 2109.35(A) provides that a party has one year to bring its challenge. Therefore, the probate court did not abuse its discretion in failing to consider the matter four years after the trustees, by filing an account, had notified all the beneficiaries that PNC Bank was serving as a trustee. See *Huntington Natl. Bank v. Heritage Invest. Group* (1983), 12 Ohio App.3d 113, 114, 12 OBR 420, 467 N.E.2d 564.

### Conclusion

{¶ 29} Therefore, we reverse that portion of the October 26, 2000 entry of the probate court, as amended on November 7, 2001, finding the Munsey children to be residual beneficiaries and thus assessing estate taxes against them in accordance with *Boerstler v. Andrews*. The matter is accordingly remanded to the probate court for the apportionment of estate taxes, interests, and costs between both groups of beneficiaries in accordance with R.C. 2113.86. And we reverse that portion of the probate court's order finding Lela Fay Roy to be in violation of the no-contest clause. We affirm the remaining portions of the entry, including the requirement that the trustees apportion the estate taxes pursuant

to R.C. 2113.86 upon the finding that Dance's intent to apportion taxes was ambiguous.

Judgment accordingly.

PAINTER, P.J., and SUNDERMANN, J., concur.