[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, which granted summary judgment to appellee, DeMarko Hartfield, Sr., as both the Administrator of the estate of Tinice Williams and the father and next friend of DeMarko Hatfield, Jr. Appellants are Travelers Indemnity Company of Illinois ("Travelers"), and Federal Insurance Company ("Federal").
 {¶ 2} On November 14, 1998, Tinice Williams, the mother of DeMarko Hartfield, Jr., died in a motor vehicle accident caused by the negligence of a third party tortfeasor. At the time of the accident, Tinice was employed by Toys "R" Us[1]. Toys "R" Us had business automobile insurance coverage with Travelers for the period of July 1, 1998 to July 1, 2001. The "Travelers Auto Policy" provided automobile liability coverage of $2 million per accident, with a "Deductible Endorsement" requiring Toys "R" Us to be responsible for the first $500,000 of any claim. Toys "R" Us also held a "Travelers SIR Excess Policy" for the same period.
 {¶ 3} In addition, a "Chubb Commercial Umbrella Policy," issued by Federal to Toys "R" Us contained two insuring agreements. The first component was an excess liability policy, Coverage A, which afforded coverage above certain scheduled underlying policies of insurance, including the Travelers Auto Policy. Coverage B, captioned "Umbrella Liability Insurance," supplied excess liability coverage, but contained an exclusion barring liability coverage for motor vehicles. The policy limit was $25 million.
 {¶ 4} In the instant declaratory judgment action, appellee asked the trial court to find that, pursuant to Scott-Pontzer v. Liberty Mut.Fire Ins. Co. (1999), 86 Ohio St.3d 660, they were entitled to uninsured/underinsured ("UM/UIM") motorist coverage under both the Travelers insurance policies and the Federal insurance policy. Appellants, Travelers and Federal each filed separate motions for summary judgment.
 {¶ 5} In its June 14, 2002 judgment entry, the common pleas court applied Scott-Pontzer and found that Tinice, as an employee of Toys "R" Us, was entitled to UM/UIM motorist coverage under the Travelers Auto Policy. Nevertheless, the court decided that R.C. 3937.18, Ohio's Uninsured Motorist Statute, was not applicable to the Travelers SIR Excess Policy[2]. The court further determined that Tinice was an "insured" under Coverage A and Coverage B of the Federal excess liability policy and, therefore, imposed $25 million in UM/UIM coverage by operation of law. The court declared, however, that the Federal policy was not triggered until appellee's losses exceeded the $2 million limit of the Travelers Auto Policy.
 {¶ 6} Travelers and Federal appeal the judgment of the trial court. Travelers maintains that the following error occurred in the proceedings below:
 {¶ 7} "The trial court erred, as a matter of law, by granting summary judgment for plaintiffs-appellees."
 {¶ 8} Federal's assignment of error reads:
 {¶ 9} "The trial court erred as a matter of law in finding plaintiffs to have been afforded UM/UIM coverage under the Federal umbrella policy by operation of law where: (1) no UM/UIM coverage was afforded plaintiffs under the controlling underlying policy; and (2) plaintiffs were not insureds under the umbrella policy."
 {¶ 10} This case is before the court on the trial court's rulings on summary judgment motions. Generally, summary judgment is appropriate where the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). However, in this cause there is no genuine issue of material fact. Rather, the dispute before the court involves only questions of law, that is, the construction of insurance contracts. Such questions are also appropriate for determination on summary judgment and are reviewed, as a matter of law, under a de novo standard. Lovewellv. Physicians Ins. Co. (1997), 79 Ohio St.3d 143, 144.
 {¶ 11} We shall consider Travelers' assignment of error first. Initially, Travelers contends that the trial court improperly held that Toys "R" Us did not validly reject UM/UIM coverage under the Travelers Auto Policy.
 {¶ 12} At the outset, Travelers questions the version of R.C.3937.18 that the trial court applied in this cause. One of the several incarnations, H.B. 20, of R.C. 3937.18 was effective between October 20, 1994 and September 3, 1997. As of September 3, 1997, an amendment, H.B. 261, to R.C. 3937.18 became effective. Toys "R" Us entered into the Travelers' automobile liability insurance contract on July 1, 1996. It was at that point that the rejection of UM/UIM coverage occurred. The July 1, 1998 Travelers Auto Policy was a renewal contract. Toys "R" Us was neither asked to reject nor rejected UM/UIM coverage at this time. Because, as discussed below, the 1997 statute ostensibly eased the requirements for a proper offer and rejection of UM/UIM coverage, Travelers argued that version of the statute in effect at the time of the renewal should apply. The trial court found, nonetheless, that the 1994 statute, and the case law interpreting that statute, were applicable to this cause. For the following reasons, we conclude that appellee prevails under either the 1994 or the 1997 UM/UIM statute.
 {¶ 13} R.C. 3937.18(A), as effective on July 1, 1996, prohibited insurers from issuing a policy of motor vehicle insurance in Ohio without first offering its insured UM/UIM coverage in the same amount as the liability coverage in the policy. Failure to make the offer resulted in the insured acquiring coverage by operation of law at limits identical to the liability coverage. Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, 567. However, the insured could expressly and knowingly reject or reduce UM/UIM coverage in writing. R.C. 3937.18(C); Id. at paragraph two of the syllabus. Furthermore, a valid rejection could follow only a valid written offer. Id. at paragraph one of the syllabus. Finally, the insurer bore the burden of establishing an offer of UM/UIM coverage. Schmacher v. Kreiner (2000), 88 Ohio St.3d 358, 360.
 {¶ 14} The standard set forth in Gyori was revisited by the Ohio Supreme court in Linko v. Indem. Ins. Co. of N. Am. (2000),90 Ohio St.3d 445. Finding that a meaningful rejection requires a meaningful offer, the Linko court set forth specific required elements for written offers. Id. at 449. The offer must contain (1) a brief description of the coverage; (2) the premium for that coverage; and (3) an express statement of the UM/UIM coverage limits. Id. at 447-448. Additionally, the court determined that the validity of the rejection must be ascertained from the four corners of the insurance contract itself. Id. at 450.
 {¶ 15} R.C. 3937.18(C), as amended by H.B. No 261 in 1997, provided that a written rejection is binding and effective when executed and creates a presumption that an offer of UM/UIM coverage was made by the insurer.[3] Thus, under this version of the statute, it appeared that the requirements of Linko and Gyori may no longer be valid. SeeMinor v. Nichols, 4th Dist. No. 01CA14, 2002-Ohio-3310 at ¶ 18;Purvis v. Cincinnati Ins. Co., 2nd Dist. No 2001-CA-104, 2002-Ohio-1803
at ¶ 67, reversed, in part, Purvis v. Cincinnati Ins. Co.,98 Ohio St.3d 1493, 2003-Ohio-1314. Accordingly, at the time that the trial court entered its judgment in the case sub judice it seemed that differing results might be reached depending upon whether the court applied either the 1994 version of R.C. 3937.18(C) or its 1997 amendment.
 {¶ 16} Recently, however, the Ohio Supreme Court attempted to clarify the situation by holding that the requirements of Linko "relative to an offer of UM/UIM coverage" are applicable to an insurance policy entered into "after the enactment of [1997] H.B. 261 and before [2001] S.B. 97[.]" Kemper v. Michigan Millers Ins. Co. (2002), 98 Ohio St.3d 162,2002-Ohio-7101 at ¶ 4. In deciding the question of waiver of UM/UIM coverage the Kemper court also held that a signed rejection form, in and of itself, does not "act as an effective declination of UM/UIM coverage, where there is no other evidence, oral or documentary, of an offer of coverage." Id. Thus, the Linko standard is appropriate in determining whether a valid offer and rejection was made under either the 1994 statute or the 1997 statute.
 {¶ 17} With regard to the presumption of an offer created by the 1997 statute, it simply shifts the burden of going forward with evidence to the party against whom the presumption is made. Minor v. Nichols at ¶ 14. Once a rebuttable presumption is met with sufficient countervailing evidence, the presumed fact is rebutted, and the presumption has no further evidentiary purpose. Id. (Citations omitted.)
 {¶ 18} As applied to the instant cause, the signed, written, rejection form is captioned:
"SUPPLEMENTARY COMMERCIAL AUTOMOBILE APPLICATION
 OHIO
(To be completed and signed by Named Insured)"
 {¶ 19} The named insured, Toys "R" Us, Inc., and the corporation's address are typed into the spaces below the caption. The Travelers Auto Policy number is handwritten on the form. The next two paragraphs contain a short description of the meaning of uninsured motorist coverage and underinsured motorist coverage for bodily injury and death and its availability under Ohio law. The supplementary application further states that, unless the insured wishes to "purchase lower limits for both Uninsured and Underinsured Motorist coverage," the limits for these coverages must be the same as the limits for liability, in this case, $2 million.
 {¶ 20} Below this is a box, check marked by an authorized agent of Toy "R" Us, that indicates that the corporation is rejecting both UM and UIM coverage in Ohio. Finally, and in conformity with both the 1994 and 1997 versions of R.C. 3937.18(C), the application states: "I understand that the coverage selection or rejection indicated above shall apply on the policy (ies) in effect at the time this form is enacted and all future renewal policies until I notify Travelers IN WRITING of any changes."
 {¶ 21} Clearly, this writing serves both as the offer and rejection of UM/UIM coverage. Although it contains a description of the coverage offered, and the limit of UM/UIM coverage can be discerned from the face of the document, it fails to state any premium for this coverage. Therefore, the form used in this case does not comply with the requirements of Linko.
 {¶ 22} Travelers contends, however, that by examining the Travelers Auto Policy, an endorsement to that policy, and a separate agreement between Toys "R" Us and Travelers, it can be determined that the premium for UM/UIM coverage is included in the liability coverage premium. Appellant relies on this court's decision in Raymond v. SentryIns., 6th Dist. No. L-01-1357, 2002-Ohio-1228, to argue that the policy, endorsement, and agreement, which is, dated October 8, 1999, can be read together to supply the missing premium.
 {¶ 23} In Raymond, an employee of a corporation sought UM/UIM coverage under his employer's business automobile insurance policy. Id. In a written proposal, the employer's insurer offered the corporation liability insurance in the amount of $2 million with a per unit premium that included the minimum UM/UIM coverage. Id. The offer also provided an option for $2 million dollars of UM/UIM coverage for an additional premium of $20 per unit. Id. The UM/UIM form stated that Ohio law required the insurer to offer UM/UIM coverage in amounts equal to the liability coverage in the policy. Id. It also contained various amounts of coverage less than $2 million, as well as a line rejecting the additional coverage and a line totally waiving UM/UIM coverage. Id. An officer of the company marked the line rejecting the additional coverage. Id.
 {¶ 24} The sole issue on appeal in Raymond was the alleged lack of a stated limit of liability coverage in the rejection form. Id. In determining Raymond, this court found that R.C. 3937.18(C), as effective on September 3, 1997, was applicable, but also held that the Linko requirements were still viable. Id. We concluded that by reading the "documents" before the insured, the liability limit was demonstrated. Id. We therefore found that appellant failed to rebut the presumption of the validity of the rejection under the statute. Id.
 {¶ 25} We conclude that Raymond is distinguishable from the case before us because, in the instant case, Travelers asks us to infer that there was no additional premium in the offer of UM/UIM coverage from (1) the policy itself; (2) an endorsement; and (3) an agreement entered into by Toys "R" Us and Travelers over three months after the renewal of the Travelers Auto policy. We decline to expand the law set forth in Linko and Kemper to such a degree. Accord, Jordan v. Travelers Prop. Cas. Ins.Co., 5th Dist. No. 2002CA00248, 2003-Ohio-1309 at ¶ 48 (refusing to consider an endorsement to a commercial automobile policy to find that a premium existed in the offer/rejection of UM/UIM coverage). Cf. Manalo v.Lumberman's Mut. Cas. Co., 2nd Dist. No. 19391, 2003-Ohio-613 at ¶¶ 27-29 (considering the affidavit of a corporation's director of risk management to satisfy the requirement of a premium[4]). Therefore, we find, as did the trial court, that the application/rejection form in this cause lacked a statement of the cost of a premium for UM/UIM coverage. Accordingly, the rejection of UM/UIM coverage is invalid and coverage is provided to appellee under the Travelers Auto Policy by operation of law.Abate v. Pioneer Cas. Co. (1970), 22 Ohio St.2d 161, paragraph two of the syllabus.
 {¶ 26} In the second question raised by Travelers in support of its assignment of error. Travelers asserts that in the event that this court finds the rejection was invalid, the common pleas court erred in failing to find that Toys "R" Us was self-insured for the amount of the deductible, that is, $500,000 in the 1998 endorsement to the Travelers Auto Policy. Travelers contends, as it did below, that Toys "R" Us was self-insured in a "practical sense" for the $500,000 layer of coverage. Therefore, Travelers argues that because R.C. 3937.18 is inapplicable to self-insurers, see Grange Mut. Cas. Co. v. Refiners Transport Terminal Corp. (1986), 21 Ohio St.3d 47, syllabus, appellee is entitled to UM/UIM coverage only for amounts in excess of $500,000 with a limit of $1.5 million. The trial court disagreed with this contention, finding that due to the fact that UM/UIM coverage arose by operation of law, the $500,000 deductible was limited to the liability coverage in the Travelers Auto Policy.
 {¶ 27} In the instant case, the July 1, 1998 Travelers Auto Policy included a "Deductible Insurance Endorsement" of $500,000. The endorsement provides, among other things, that Travelers is obligated to pay damages and allocated loss adjustment expenses which are in excess of the deductible amount. The endorsement further states that Travelers "may pay any or all of the deductible amount to effect "a settlement or suit on any claim and shall be reimbursed by Toys "R" Us for the amount of the deductible paid.
 {¶ 28} One of the conditions of the Travelers Auto Policy provides that the bankruptcy or insolvency of Toys "R" Us does not relieve Travelers of its obligations under that policy. However, as part of an agreement between Toys "R" Us and Travelers, Toys "R" Us was required to maintain letters of credit (The amount in the letter of credit in effect at the time of the agreement was $38.7 million.). If Toys "R" Us became, inter alia, insolvent or filed for bankruptcy protection, Travelers retained the right to immediately terminate the agreement and satisfy any monies owed by drawing upon the letter of credit.
 {¶ 29} Generally, under Ohio statutory law, a self-insurer of motor vehicles must provide proof of financial responsibility by filing a surety bond as provided in R.C. 4509.59 or a certificate of self-insurance as provided in R.C. 4509.72. See R.C. 4509.45(C) and (E). It is undisputed that Toys "R" Us neither filed a surety bond nor a certificate of self-insurance. Nonetheless, this court has previously determined that, pursuant to Refiners, Toys "R" Us may be a self-insurer "in a practical sense" in a situation where the insured retains the risk of loss. McCollum v. Continental Ins. Co., 6th Dist. No. L-92-141.[5]
We recently re-affirmed this position in Kohntopp v. Hamilton Mut. Ins., WD-02-033. Therefore, in deciding whether Toys "R" Us is self-insured in a practical sense for the $500,000 deductible, we are required to determine which party in the case before us bears the risk of loss.Tucker v. Wilson, 12th Dist. No. CA2002-01-002, 2002-Ohio-5142 at ¶ 8.
 {¶ 30} In two Scott-Pontzer cases with strikingly similar facts relevant to the issue under consideration, the Fifth Appellate District found that by agreeing to reimburse their commercial automobile insurance companies up to their deductibles and by providing a letter of credit or other security upon which the insurance companies could draw in the case of default, the employers involved bore the risk of loss and, as a result, were self-insured for the amount of the deductible. See Jordanv. Travelers Prop. Cas. Ins. Co., 5th Dist. No. 2002CA00248,2003-Ohio-1309 at ¶ 56; Dalton v. Travelers Prop. Cas. Ins. Co., 5th Dist. Nos. 2001CA00380, 2001CA00393, 2001CA00409, 2002-Ohio-7369 at ¶ 146. See, also, Cincinnati Ins. Co. v. Torok (2003),152 Ohio App.3d 398 (The employer's insurance liability limit matched its deductible, the employer entered into a reimbursement agreement with its commercial motor vehicle insurer, and the agreement was secured by a letter of credit. Therefore, the employer bore the risk of all loss and was a self-insurer in the practical sense.).
 {¶ 31} Although, in the present case, a bankruptcy clause exists in the Travelers Auto Policy, we are of the opinion that the reimbursement agreement and the requirement of a letter of credit negates the effect of that clause. Cf. Tucker v. Wilson at ¶¶ 14-17 (The business automobile liability policy had a matching liability limit/deductible, but the policy also contained a bankruptcy clause requiring the insurer to fulfill its obligation to pay valid claims if the employer filed for bankruptcy or became insolvent. There was no reimbursement agreement or letter of credit upon which the insurer could draw in the event of the insured's default. As a result, the Twelfth Appellate District decided that the employer was not self-insured in a practical sense.). Accordingly, like the Jordan and Dalton court, we find that Toys "R" Us bears the entire risk of loss for any amount up to $500,000 and is thus self-insured in the practical sense for any damages up to that amount. As a consequence, R.C. 3937.18 is inapplicable to the $500,000 deductible in the Travelers Auto Policy, and UM/UIM coverage is available only for damages exceeding the $500,000 deductible with a limit of $1.5 million. As a result, the trial court erred in finding that appellee was entitled to UM/UIM coverage in the amount of $2 million as set forth in the Travelers Auto Policy.
 {¶ 32} Based on the foregoing analysis, Travelers sole assignment of error is found not well-taken, in part, and well-taken, in part.
 {¶ 33} We now turn to Federal's sole assignment of error. Federal contends that the trial court erred in finding that Tinice, as an employee of Toys "R" Us, was entitled to UM/UIM coverage under the Federal excess policy by operation of law. Federal first asserts that because Toys "R" US rejected UM/UIM coverage under the Travelers Auto Policy, this coverage is not available through its excess policy. In the alternative, Federal makes several arguments concerning the various terms of the excess policy that define who is an "insured" (Coverage A and B) and that exclude motor vehicle liability coverage (Coverage B). Based on the holdings of the Ohio Supreme Court in Scott-Pontzer, we must reject Federal's arguments.
 {¶ 34} The trial court found that Tinice, as an employee of Toys "R" Us, was an insured under the Travelers Auto Policy. Travelers does not dispute this finding nor do we find it to be error[6]. The trial court also concluded, and as we have also explained, the rejection of UM/UIM coverage was invalid; therefore, UM/UIM coverage is provided to appellee under the Travelers Auto Policy by operation of law. Accordingly, Federal's first argument regarding the purportedly valid rejection of UM/UIM coverage is without merit. Further, we are of the opinion that Scott-Pontzer is wholly dispositive of Federal's remaining arguments.
 {¶ 35} In Scott-Pontzer, the decedent, Christopher T. Pontzer, was killed in a motor vehicle collision caused by a negligent motorist. The motorist had a motor vehicle policy with limits of $100,000 per person and $300,000 per accident.
 {¶ 36} At the time of his death, Christopher was employed by Superior Dairy, Inc. ("Superior"). Superior was insured pursuant to an underlying commercial motor vehicle liability insurance with Liberty Mutual Fire Insurance Company that provided underinsured motorist coverage, and an excess insurance policy with Liberty Mutual Insurance Company.
 {¶ 37} In the ensuing declaratory judgment action instituted by Christopher's surviving spouse and administratrix of his estate, the issues on appeal to the Ohio Supreme Court were (1) whether Christopher, as an employee of Superior, was an insured for the purpose of underinsured motorist coverage pursuant to the underlying liability policy and the excess policy; (2) if Christopher was an "insured" under these policies, whether he was entitled to underinsured motorist coverage only if he was acting within the scope of his employment at the time of the collision; and (3) if, after underinsured motorist coverage is inserted into a motor vehicle insurance policy by operation of law, exclusions pertinent to liability coverage also apply to the underinsured coverage. Id. at 662.
 {¶ 38} The Scott-Pontzer court, in construing the language in the underlying policy, found that the meaning of "insureds" was ambiguous because the term "You" in referring to Superior as the insured was meaningless unless it included Superior's employees (Only persons, not corporate entities "can occupy an automobile, suffer bodily injury or death, or operate a motor vehicle"). Id. at 664. The court therefore decided that the underlying liability insurance policy afforded Christopher underinsured motorist coverage. Id. at 665.
 {¶ 39} The Ohio Supreme Court then proceeded to address the second and third issues as they related to Superior's excess insurance policy. Because the excess liability policy failed to provide underinsured motorist coverage and no evidence was offered to demonstrate that Superior rejected such coverage, the Scott-Pontzer court determined that underinsured coverage was provided by operation of law. The majority then found that as an employee of Superior Dairy, Christopher was also an insured under Superior's excess policy. Id. Finally, and of greater importance to the case before us, the Scott-Pontzer court held that because the excess policy underinsured coverage arose by operation of law, any language in that policy "restricting insurance coverage was intended to apply solely to excess liability coverage and not for purposes of underinsured motorist coverage." Id. at 666. Therefore, the court concluded that the restriction in the excess policy which required that an employee be injured within the scope of his employment applied only to excess liability coverage. Id.
 {¶ 40} Here, Federal insists that Tinice is not an insured within the meaning of the "Who Is An Insured" provisions of either Coverage A or Coverage B of the Federal excess liability policy. Federal also argues that Coverage B expressly excludes motor vehicle liability coverage. However, based upon the reasoning and holding in Scott-Pontzer, this court is required to find that the restrictions on the meaning of "insured" in Coverages A and B and the prohibition in Coverage B against motor vehicle liability coverage apply solely to liability coverage and not to UM/UIM coverage imposed by operation of law. See Greene v.Westfield Ins. Co., 5th Dist. No. 2002CA00114, 2002-Ohio-6179 at ¶ 26; Roper v. State Automobile Mut. Ins. Co., 1st Dist. No. C-010117,2002-Ohio-3283 at ¶ 44. Accordingly, the trial court did not err in granting summary judgment to appellee on his claim against Federal, and Federal's sole assignment of error is found not-well-taken.
 {¶ 41} Prior to ending our discussion, we must deal with an issue raised by appellee in his brief in response to Federal's appellate brief. In his brief, appellee maintains that the trial court erred in determining that he was entitled to UM/UIM coverage under the Federal excess policy only when his damages exceeded the limit for any covered losses under the Travelers Auto Policy. Appellee, however, never filed a notice of cross-appeal. Because "cross-assignments of error" by an appellee who has not filed a notice of appeal may be considered only when necessary to prevent a reversal and we are affirming the court's judgment with regard to Federal, we will not address the issue raised by appellee. Grendell v. Ohio EPA (2001), 146 Ohio App.3d 1, 15, citingDuracote Corp. v. Goodyear Tire Rubber Co. (1983), 2 Ohio St.3d 160,163-164.
 {¶ 42} Because we determined that Toys "R" Us is self-insured up to the amount of the deductible in its Travelers Auto Policy, we conclude that the second issue raised by Travelers involved a partial "fronting agreement," as defined in Kohntopp. As noted in fn. 5 in the case sub judice, Ohio courts of appeal are in conflict on the issue of whether fronting agreements are self-insurance for the purpose of UM/UIM coverage and the application of Scott-Pontzer. Therefore, pursuant to Article IV, Section 3(B)(4) of the Ohio Constitution, we hereby certify a conflict to the Ohio Supreme Court on this issue only for review and final determination.
 {¶ 43} The judgment of the Lucas County Court of Common Pleas as it relates to Travelers Indemnity Company of Illinois is affirmed, in part, and reversed, in part. The judgment of the lower court with regard to Federal Insurance Company is affirmed. This cause is remanded to the trial court for the entry of a judgment consistent with this decision. Federal Insurance company is ordered to pay one-half of the costs of this appeal. Travelers Indemnity Company of Illinois and appellee are ordered to pay one-fourth of the costs of this appeal.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
 Peter M. Handwork, P.J. Mark L. Pietrykowski, J. Judith Ann Lanzinger, J.
[1] Toys "R" Us and Marsh USA were originally named as defendants in this cause. Appellees' claims against these parties were, however, voluntarily dismissed without prejudice, prior to the entry of the judgment appealed by appellants.
[2] Appellee does not challenge this finding.
[3] R.C. 3937.18(A), effective October 31, 2001, the General Assembly's latest rendering of the statute, eliminates any mandatory offer of UM/UIM coverage.
[4] We note that the affidavit of the risk director in Manalo specifically referred to an increase in premiums in his affidavit. Id. at ¶ 27. The affidavit of the risk manager analyst for Toys "R" Us makes no such reference.
[5] There is a split of authority among the Ohio appellate districts. The Tenth and the Eighth Appellate Districts decline to find that an employer is self-insured unless it complies with Ohio's financial responsibility laws by filing a certificate of self-insurance, or a surety bond which evidences that the employer retains the risk of loss. See, e.g., Archer v. ACE USA (2003), 152 Ohio App.3d 445; Gilchrist v.Gonsor, 8th Dist. No. 80944, 2003-Ohio-2297 at ¶ 10. See, also,Grubb v. Mich. Mut. Ins. Co. 2nd Dist. No. 19575, 2003-Ohio-1558 at ¶ 21. But, see Hellman v. Motorist Mut. Ins. Co., 3rd Dist. No. 12-02-14, 2003-Ohio-2671 at ¶ 22-23; Adams v. Fink, 4th Dist. No. 02CA2660, 2003-Ohio-1437 at ¶ 15-16; Musser v. Musser, 4th Dist. No. 02CA750, 2003-Ohio-1440 at ¶ 19-20; and the appellate cases cited in support of this court's decision.
[6] The definition of "Who Is An Insured" in the Travelers Auto Policy is identical to the "Who Is An Insured" provision in the commercial automobile liability policy construed in Scott-Pontzer.