DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Sandusky County Court of Common Pleas, which granted summary judgment to appellee, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"). The undisputed facts of this cause are as follows.
On July 11, 1999, appellant, Amanda Townsley, a minor child, was injured in a motor vehicle accident caused by the negligence of an underinsured tortfeasor. Appellants, Amanda and her family, Maureen, Frank, and Luke Townsley, settled with the tortfeasor's motor vehicle liability insurer for $30,000. They then commenced the instant declaratory judgment action, seeking a determination as to whether they were entitled to uninsured/underinsured motorist ("UM/UIM") coverage under a multi-state commercial motor vehicle policy ("Auto Policy") issued by National Union to Frank's employer, Whirlpool Corporation. The Auto Policy was effective from July 1, 1999 to July 1, 2000.
 {¶ 2} National Union answered and, subsequently, filed a motion for summary judgment in which it argued that the undisputed facts showed that the Whirlpool is self-insured in the practical sense and is, therefore, exempt from the requirements of R.C. 3739.18, Ohio's Uninsured Motorist Statute. National Union contended that it entered into an agreement with Whirlpool under which Whirlpool retained the risk of any loss occurring within the meaning of the Auto Policy. National Union offered the following documents in support of its motion for summary judgment.
The Auto Policy provided $2 million dollars in liability coverage with a matching $2 million deductible.[1] The Auto Policy further contained a clause stating that the bankruptcy of the insured, Whirlpool, did not relieve National Union of any of its obligations under the Auto Policy.
 {¶ 3} Nonetheless, as part of its risk management program, Whirlpool, on July 1, 1998, entered into a "Payment Agreement" with National Union. The Payment Agreement required Whirlpool to deliver collateral to National Union to secure its obligation to repay, that is, to indemnify National Union for any amount paid on Whirlpool's behalf "because of any occurrence, accident, offense, claim or suit." The agreement allowed National Union to review the amount of collateral at any time, including, but not limited to, a situation in which Whirlpool or any of its subsidiaries experienced any adverse change in financial conditions. Pursuant to the agreement, National Union could require additional collateral or reduce the amount of collateral, depending on the insurer's assessment of Whirlpool's financial condition. Under Part C of the Schedule of Policies and Payments, as annexed to the Payment Agreement on July 1, 1999, Whirlpool was required to provide a letter of credit as collateral in the amount of $7,940,000.
 {¶ 4} A July 1, 1999 endorsement to the Payment Agreement permitted National Union to pay an established automobile liability claim against Whirlpool up to a self-insured retained amount of $1 million. National Union would then pay out the remaining amount owed up to the $2 million liability limit and, in turn, collect that amount from Whirlpool. However, the fact that the endorsement contained a "self-insured retained" amount did not change the matching motor vehicle liability limit and deductible of $2 million.
Upon consideration of National Union's motion for summary judgment and appellants' memorandum in opposition, the trial court found that Whirlpool was self-insured "in the practical sense." The court therefore held that the requirements of R.C. 3937.18 were not applicable, and appellants could not procure UM/UIM coverage under the National Union commercial motor vehicle policy.
 {¶ 5} On appeal, appellants assert the following assignment of error:
 {¶ 6} "The trial court erred in granting summary judgment, [sic] because the appellee was not a self-insurer and was therefore not exempt from the requirements of R.C. 3937.18."
 {¶ 7} Summary judgment is appropriate where the evidence shows that there is no genuine issue as to any material fact, reasonable minds can come to only one conclusion and that conclusion is unfavorable to the nonmoving party, and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Our review of the grant or denial of a motion for summary judgment is de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105.
Self-insured business entities are exempt from the UM/UIM coverage requirements of R.C. 3937.18, as effective on September 3, 1997. GrangeMut. Cas. Co. v. Refiners Transport Terminal Corp. (1986),21 Ohio St.3d 47, syllabus. Ordinarily, to be considered self-insured, a business must comply with Ohio's financial responsibility laws by filing a certificate of insurance or a surety bond. See R.C. 4509.45 and R.C.4509.72. However, this court recently determined that under a "fronting agreement" a business entity can be deemed self-insured in the practical sense. See Kohntopp v. Hamilton Mut. Ins., 6th Dist. No. WD-02-033,2003-Ohio-2793 at ¶ 18. See, also, Hartfield v. Toys "R" Us, 6th Dist. No. L-02-1228, 2003-Ohio-2905 at ¶ 31.
 {¶ 8} A "fronting agreement" is "a method of administering insurance claims by `renting an insurance company's licensing and filing capabilities in a particular state or states.'" Kohntopp at ¶ 13-14, quoting Grubb v. Michigan Mut. Ins. Co., 2nd Dist. No. 19575,2003-Ohio-1558 at ¶ 19; Tucker v. Wilson, 12th Dist. No. CA2002-01-002, 2002-Ohio-5142 at ¶ 2 fn. 2. The crucial question to be answered in such cases is who bears the risk of loss. Hartfield v.Toys "R" Us at ¶ 29.
 {¶ 9} In Kohntopp, the employer's insurance policy had a motor vehicle liability coverage limit of $2.5 million and a matching deductible of $2.5 million. Id. at ¶ 17. Despite a bankruptcy clause compelling the insurer to pay obligations under the liability coverage in the event the employer filed for bankruptcy or became insolvent, we concluded that other language in the policy and in endorsements to the policy constituted a fronting agreement that made the employer "ultimately legally responsible for any claims made in connection with the operation of its motor vehicles." Id. at ¶ 18. Thus, we found that there was no shift of risk of loss from the employer to its insurer. Id. As a result, we held that the employer in Kohntopp was self-insured in the practical sense and was exempt from the provisions of R.C. 3937.18. Id.
As in the case before us, Hartfield involved an employer's commercial motor vehicle liability policy, an endorsement, and a reimbursement agreement. Id. at ¶ 26-28. The policy in question also contained a bankruptcy clause requiring the insurer to honor its obligations under the policy in the event that the employer became bankrupt or insolvent. Id. at ¶ 28. However, pursuant to the reimbursement agreement, the employer was required to maintain a letter of credit. Id. If the employer filed for bankruptcy or became insolvent, the insurer could immediately terminate the agreement and satisfy any monies owed by the employer by drawing on the letter of credit. Id. Therefore, in Hartfield, we also held that the employer was self-insured in the practical sense. Id. at 31.[2]
 {¶ 10} After a thorough review of the National Union commercial motor vehicle liability policy, the Payment Agreement, and the endorsement, we are of the opinion that this cause is indistinguishable from Kohntopp and Hartfield. Accordingly, on the authority of those cases, we find that a fronting agreement exists in this cause under which the risk of loss does not shift from Whirlpool to National Union. Consequently, Whirlpool is self-insured in the practical sense and is exempt from the provisions of R.C. 3937.18. The trial court did not err in granting summary judgment to National Union. Appellants' sole assignment of error is found not well taken.
 {¶ 11} There is a split of authority among Ohio courts of appeal on the issue of whether fronting agreements are self-insurance for the purpose of UM/UIM coverage and the application of Scott-Pontzer v..Liberty Mut. Fire Ins. Co. (1990), 86 Ohio St.3d 660.
See, e.g., Archer v. ACE USA (2003), 152 Ohio App.3d 445; Gilchrist v.Gonsor, 8th Dist. No. 80944, 2003-Ohio-2297 at ¶ 10. See, also,Grubb v. Mich. Mut. Ins. Co., 2nd Dist. No. 19575, 2003-Ohio-1558 at ¶ 21. But, see, Hellman v. Motorist Mut. Ins. Co., 3rd Dist. No. 12-02-14, 2003-Ohio-2671 at ¶ 22-23; Adams v. Fink, 4th Dist. No. 02CA2660, 2003-Ohio-1457 at ¶ 15-16; and Musser v. Musser, 4th Dist. No. 02CA750, 2003-Ohio-1440 at ¶ 19-20. Therefore, pursuant to Article IV, Section 3(B)(4) of the Ohio Constitution, we hereby certify a conflict to the Ohio Supreme Court on this issue for review and final determination.
 {¶ 12} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Sandusky County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., Mark L. Pietrykowski, J., and Judith AnnLanzinger, J., CONCUR.
[1] An Ohio endorsement allowed $25,000 in UM/UIM coverage. However, this endorsement becomes an issue only if we find that Whirlpool is not self-insured in a practical sense.
[2] The only difference between this cause and Hartfield is that the employer in Hartfield was self-insured for the amount of the deductible rather than for the entire limit of liability coverage. Id. at ¶ 31.